*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUNANTRA KIRK,

        Plaintiff-Appellant,

v

BENJAMIN HARPER, M.D., and RIVER VALLEY ORTHOPEDICS PC,

        Defendants-Appellees.

UNPUBLISHED
June 18, 2026
9:39 AM

No. 375489
Kent Circuit Court
LC No. 24-000535-NH

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendants' motion to exclude plaintiff's expert, Dr. Glenn Whitted, and for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant, Dr. Benjamin Harper, M.D., performed a knee replacement on plaintiff. During the surgery, plaintiff's popliteal artery was damaged and had to be repaired by a vascular surgeon. After being discharged from the hospital, plaintiff began treating with a neurologist for numbness and nerve pain. She filed suit alleging medical malpractice against Dr. Harper and vicarious liability against defendant River Valley Orthopedics, PC. She alleged Dr. Harper breached the standard of care by failing to properly use retractors, failing to properly use the surgical saw, and failing to timely recognize the injured artery.

Dr. Harper was deposed about the circumstances surrounding the surgery. He discussed the steps he took to protect plaintiff's popliteal artery with retractors and confirmed that the artery was not visible during the procedure. He also confirmed that, while his own operative notes did not mention anomalies, the vascular surgeon who repaired plaintiff's popliteal artery noted in her operative report that plaintiff had abnormal anatomy which made it difficult for her to locate the artery. Specifically, the note explained that "the dissection took much longer than is usual because of the recent surgery with some [heme staining], obesity, and the more lateral placement of her musculature and neurovascular bundle."

Plaintiff's expert, Dr. Whitted, was also deposed. He testified that plaintiff's injury could not have occurred without negligence. He conceded that he had no evidence that Dr. Harper failed to properly place the retractors or negligently used the saw and had no medical literature to support his opinion that negligence had to have occurred. Instead, Dr. Whitted opined that damaging the artery, most likely with the saw, was alone sufficient to show a breach of the standard of care.

Finally, defendants' expert, Dr. Mark Karadsheh, M.D., was deposed. He agreed that plaintiff's injury was most likely sustained by the saw but opined that there was no evidence that suggested Dr. Harper breached the standard of care by using the saw incorrectly. Defendants also provided medical literature identifying situations, although rare, in which injuries like this can occur in knee replacement surgeries absent negligence.

Defendants moved to exclude Dr. Whitted's testimony, arguing his opinions were unreliable and inadmissible. They further moved for summary disposition under MCR 2.116(C)(10) because the exclusion of Dr. Whitted's testimony, plaintiff's only expert witness as to the standard of care, meant that plaintiff was unable to establish the requisite elements of medical malpractice. The trial court granted the motion. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Danhoff v Fahim*, 513 Mich 427, 441; 15 NW3d 262 (2024). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the claim." *Id*. "A trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion for summary disposition may only be granted on this basis when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citations omitted).

"The proper interpretation of statutes and the Michigan Rules of Evidence is also reviewed de novo." *Id*. "Evidentiary issues are reviewed for an abuse of discretion." *Id*. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. at 442. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*.

## III. ANALYSIS

Plaintiff argues that the trial court erred by finding that Dr. Whitted's testimony was inadmissible and by granting defendants' motion for summary disposition on that basis. We agree.

"A plaintiff in a medical malpractice action bears the burden of establishing (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Id*. (quotation marks and citations omitted). "Generally, a plaintiff must produce expert testimony to support their position as to the standard of care in their case and that the standard was breached." *Id*. "The proponent of the evidence—in this case, plaintiff—bears the burden of demonstrating the relevance and admissibility of the expert's opinions." *Id*. "To do so, plaintiff must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955, and MCL 600.2169." *Id*. at 442-443

(quotation marks and citations omitted). MCL 600.2169 is not at issue in this case because Dr. Whitted's qualifications are not in dispute.

MRE 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The trial court serves as the gatekeeper when evaluating whether an expert's testimony is admissible under MRE 702 in order to weed out "junk science[.]" *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780-782; 685 NW2d 391 (2004). It has long been recognized that MRE 702 imposes the "obligation on the trial court to ensure that any expert testimony admitted at trial is reliable[,]" and a trial court "may admit evidence only once it ensures, pursuant to MRE 702, that [the] expert testimony meets [the] rule's standard of reliability." *Id*.

A trial court evaluating expert testimony under MRE 702 "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Danhoff*, 513 Mich at 448 (quotation marks and citations omitted). "A lack of supporting literature is an important but not dispositive factor in determining whether a medical malpractice plaintiff's expert's testimony is admissible." *Id*. "[U]nder MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id*. at 449 (quotation marks and citation omitted).

The trial court found MRE 702(c) and (d) were not satisfied in this case. Plaintiff emphasizes on appeal that Dr. Whitted's testimony was based not only on the low incidence rate of a popliteal artery injury in a total knee arthroplasty but also the severity of the injury and the fact that there was no evidence that the artery itself had abnormal anatomy. Although Dr. Whitted did not rely on literature, he testified that the proper standard of care in a total knee arthroplasty involves the use of a "whittling technique" as opposed to a plunging technique. Dr. Karadsheh agreed with Dr. Whitted's opinion about a plunging technique being a breach of the standard of care. Importantly, Dr. Harper was asked during his deposition about the saw technique he used during plaintiff's surgery. He explained that it was not necessarily solely a plunging or whittling cut, it was "a little bit of both." Accordingly, the evidence presented below demonstrates that Dr.

Whitted's opinion about the standard of care with respect to the plunging technique was relevant and reliable, and the trial court erred by proscribing its admission.[1]

By extension, because the trial court erred by barring Dr. Whitted's testimony, it necessarily erred when it granted summary disposition to defendants. Plaintiff presented sufficient expert testimony as to the standard of care to support a prima facie case of medical malpractice, and the facts in this case show that there is a genuine issue of material fact as to what type of technique Dr. Harper used, and whether his efforts were at all hindered by any abnormal anatomy in plaintiff's knee.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Daniel S. Korobkin
/s/ Mariam S. Bazzi

---

[1] For the same reasons, plaintiff satisfied her burden under MCL 600.2955. Dr. Karadsheh's testimony demonstrates that Dr. Whitted's standard-of-care opinion was a generally accepted standard by experts in the field.